UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMANDA TAPLEY,

    Plaintiff,

v.                                                      Case No. 1:13-cv-262
                                                      Hon. Hugh W. Brenneman, Jr.
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                               /

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for Supplemental Security Income (SSI).

        Plaintiff was born on November 10, 1991 (AR 155).[1] She alleged a disability onset date of November 10, 2003 (AR 155). Plaintiff completed the 11th grade and has never been employed (AR 159, 166). Plaintiff identified her disabling conditions as: Aspergers disorder; cognitive disorder NOS; anxiety disorder NOS; and Autism (AR 159). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on September 15, 2011 (AR 13-22). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since her SSI application date of Deember 1, 2009 (AR 15). Second, the ALJ found that plaintiff had severe impairments of attention deficit hyperactive disorder (ADHD), Asperger's, anxiety, and depression (AR 15). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 16). Specifically, plaintiff did not meet the requirements of Listings 12.02 (organic mental disorders), 12.04 (affective disorders), and 12.06 (anxiety related disorders) (AR 16-17). The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC) "to perform a full range of work at all exertional levels but with the following non-exertional limitations: limited to simple, routine tasks, no constant contact with the public or constant changes in work expectations and work environment" (AR 17). The ALJ also found that plaintiff had no past relevant work (AR 20).

At the fifth step, the ALJ determined that plaintiff could perform a range of unskilled light work at all exertional levels in the regional economy (defined as the Lower Peninsula of Michigan) (AR 21). Representative occupations include: light cleaning (5,000 jobs); packaging (6,500 jobs); and machine operator/tender (8,000 jobs) (AR 21). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since December 1, 2009, the date the application for SSI was filed (AR 21-22).

4

### III. ANALYSIS

Plaintiff has raised one issue on appeal:

**The Decision wrongly rejects the medical opinions of the treating sources without an evidentiary basis, thereby ignoring evidence leading to a finding of disability.**

Plaintiff has received treatment for mood disorder, ADHD and adjustment disorder (AR 466). Plaintiff contends that the ALJ improperly rejected the opinion of treating sources Elizabeth Sunde, M.D. and Lorraine Harper, LMSW, who prepared a medical provider's assessment of plaintiff' ability to do work-related mental activities dated August 8, 2011 (AR 465-69).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of

a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip*, 25 F.3d 284 at 287.

Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

### A. Ms. Harper

The requirement that the Commissioner give "good reasons" for the weight given to an opinion applies only to "treating sources" (i.e., a physician, psychologist or other acceptable medical source who has provided medical treatment or evaluation). *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007) ("[b]efore determining whether the ALJ violated *Wilson* by failing to properly consider a medical source, we must first classify that source as a 'treating source'"); *Burke ex rel. A.R.B. v. Astrue*, No. 6:07-cv-376, 2008 WL 1771923 at *7 (E.D. Ky. April 17, 2008) ("the deferential reason-giving requirements for the rejection of a

6

treating-source opinion necessarily do not apply where the source in question is not an 'acceptable medical source'"). An "acceptable medical source" refers to one of the sources described in § 416.913(a), i.e., licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. *See* 20 C.F.R. §§ 416.902 and 416.913(a). As a social worker, Ms. Harper is considered an "other" medical source. *See* 20 C.F.R. §416.913(d)(1) ("other" medical sources include nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists and therapists). Because Ms. Harper is not an acceptable medical source, the ALJ was neither required to give her opinions "complete deference" nor required to meet the "good reason" requirement of § 416.927(d)(2). *See Smith*, 482 F.3d at 876; *Burke ex rel. A.R.B.*, 2008 WL 1771923 at *7.

**B.     Dr. Sunde**

In the August 8, 2011 assessment, Dr. Sunde stated that plaintiff's social anxiety was the primary limitation in a work setting (AR 467). The doctor explained that small things which most people can handle are "overwhelming" to plaintiff, e.g., plaintiff takes criticism so personally that she cannot accept supervision, and "will freeze up, cry or withdraw until she is able to compose herself" and if a co-worker is short with her, plaintiff overreacts and cannot understand why someone would be so unkind to her, leading to an "emotional meltdown" (AR 467). In addition, plaintiff suffers from performance anxiety, e.g., it is difficult for plaintiff to initiate telephone calls and plaintiff could not perform at the animal grooming school because she was anxious as to how the dogs would respond to her (AR 467). In Dr. Sunde's words, these limitations would require "an accommodating employer" to give plaintiff unscheduled breaks of 15 to 30 minutes throughout the day when she felt overwhelmed with her job responsibilities (AR 467-68).

7

Dr. Sunde also found that plaintiff's conditions resulted in an "extreme limitation" ("a degree of limitation that is incompatible with the ability to do any gainful activity") in plaintiff's ability to behave in an emotionally stable manner (AR 465-66). These conditions also resulted in "marked limitations" ("limitations that seriously, but not completely, interfere with the ability to function independently, appropriately and effectively on a sustained basis") in the following employment related activities: deal with the public; deal with work stresses; function independently; the ability to understand, remember and carry out complex job instructions, and relate predictably in social situations (AR 465-66). Dr. Sunde noted that these limitations have existed since at least December 2009 (465-66).

The ALJ summarized plaintiff's treatment and evaluated Dr. Sunde's opinions as follows:

> As to claimants [sic] anxiety and depression, a school psychology report from October 2008 noted a diagnosis of mood regulation and anxiety disorder NOS with features of situational depression. In addition, a GAF of 55 to 60 was assigned, which indicated only moderate symptoms (Exhibit 6F/24-29). The record contains evidence of a partial psychiatric adolescent admission in July 2009 for two days. Upon exam claimant was found to be 6 weeks pregnant. She sought help to cope with anxiety and overwhelmed feeling related to learning she was pregnant. Claimant was very anxious and tearful particularly early on during the admission and while processing her choices. However, at discharge claimant was much improved and was diagnosed with mood disorder NOS, adjustment disorder with mixed anxiety and depressed mood, and was assigned a GAF of 59, which indicated only moderate symptoms (Exhibit 5F). In addition, office notes from Lorraine Harper, LMSW, claimant's social worker covering the periods January 2010 through February 2011, noted some anxiety and depression, however the anxiety and depression were related to issues with her family, her not wanting to leave school after graduation, and her on and off again relationship with her boyfriend. Moreover, Ms. Harper noted claimant was generally making significant progress with the goals of the sessions and her functional change was improving (Exhibit 13F). Additionally, claimant grocery shopped with her mom, played video games with friends and frequented the mall. Further, she was taking driving lessons; she enjoyed art, and enjoyed hanging out at the campground with her parents. In addition, claimant testified to attending monthly support group meetings, which she reported

helped and where she met her new boyfriend. Further, she stated she was taking prescribed medications for her anxiety and depression, which helped with no reported major medication side effects.

Accordingly, the evidence demonstrates claimant has allegations of ADHD, Asperger's, anxiety and depression. However, the record indicates claimant does volunteer work two days per week on a regular basis. She helped customers and got along well with co-workers. Her IQ scores placed her in the average range of cognitive functioning with average cognitive abilities (Exhibit 8F). Her anxiety and depression were found to be situational, specifically related to her family and her relationship with her ex-boyfriend and his upcoming trial [2]. In addition, claimant was able to go grocery shopping, play video games with friends and take trips to the mall. She was taking driving lessons, she enjoyed art, and she had a new boyfriend and enjoyed hanging out at the campground. Lastly, claimant had several teary sessions at the hearing, but would recover very quickly and was able to testify.

\* \* \*

Additionally, I have considered the August 2011 mental assessment from Elizabeth Sunde, M.D., and Lorraine Harper, LMSW that found claimant was marked in dealing with the public and handling work stresses, marked in her ability to function independently and handle complex job instructions, and marked in her ability to relate predictably in social situations and maintain social functioning (Exhibit 15F). In deciding whether or not to adopt the treating source's opinion in this situation, the following factors are to be considered along with any other appropriate factors: the examining relationship, the treatment relationship in terms of its frequency and duration, supportability, consistency, and specialization. Particular attention is to be given to the consistency of the opinion with other evidence, the qualifications of the source, and the degree to which the source offers supporting explanations for the opinion (20 CFR 416.927(d) & (f); Social Security Ruling 96-2p). The opinion from Dr. Sunde and Ms. Harper is inconsistent with claimant's social life, as she attends monthly support meetings, hangs out with her friends and has a relationship with her boyfriend. In addition, their opinion is inconsistent with the medical evidence record as a whole. Therefore, I give little weight to the opinion of Dr. Sunde and Ms. Harper (20 CFR 416.927 (d) (2) and Social Security Ruling 96-2p).

\* \* \*

---

[2] The ALJ noted that during the hearing, plaintiff "was also teary when discussing the fact that her ex-boyfriend was on trial for murder and that she had to be a witness for the prosecution in the case" (AR 18). Plaintiff's brief refers to three boyfriends: one who got her pregnant and then moved to Indiana before her psychiatric hospitalization (AR 251); one who murdered a friend (AR 449); and one met her in support meetings (AR 455). Plaintiff's Brief at p. 16.

In sum, the above residual functional capacity assessment is supported by claimant's positive response to medication, her significant progress in meeting her counseling goals and her improved overall functioning and her active social life.

(AR 19-20).

The ALJ gave good reasons for giving little weight to Dr. Sunde's opinion. The ALJ's decision points out that the doctor's opinion is inconsistent with plaintiff's social life. Because plaintiff has no employment history, the ALJ could rely on the available evidence, such as her daily social activities, to evaluate plaintiff's social functioning. In addition, the ALJ found that Dr. Sunde's opinion "is inconsistent with the medical evidence record as a whole" (AR 20). In all candor, the ALJ's latter, imprecise finding is not particularly helpful to the reviewing Court. *See Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985) ("It is more than merely helpful for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review.) (internal quotation marks omitted).

Nevertheless, the Court will not remand this matter because previous portions of the ALJ's decision identified inconsistencies between plaintiff's activities and Dr. Sunde's opinion regarding the severity of her condition. In reviewing the evidence, the ALJ found that: plaintiff engaged in various social activities including volunteer work; plaintiff took prescribed medications for anxiety and depression with a positive response and no side effects; plaintiff was generally making significant progress with the goals of the therapy sessions; plaintiff's overall functioning was improving; and plaintiff's anxiety and depression were situational (AR 19-20).

The Court could remand this matter to require the ALJ to provide a better articulation of the reasons for giving Dr. Sunde's opinion little weight. However, given the ALJ's findings, a

10

remand would not change the result in this particular case. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). *See Kobetic v. Commissioner of Social Security*, 114 Fed. Appx. 171, 173 (6th Cir. 2004) ( "[w]hen 'remand would be an idle and useless formality,' courts are not required 'to convert judicial review of agency action into a ping-pong game'" (*quoting NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969)). Accordingly, plaintiff's claim of error will be denied.

### IV. CONCLUSION

The ALJ's determination is supported by substantial evidence. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.


Dated: March 18, 2014          /s/ Hugh W. Brenneman, Jr.
                               HUGH W. BRENNEMAN, JR.
                               United States Magistrate Judge